**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE. NO. 1:20-CR-110 |
| | ) | |
| Plaintiff | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO REVOKE DETENTION ORDER** |
| | ) | |
| JAVIAN HEARNS | ) | |
| | ) | |
| Defendant | ) | |

This Memorandum Opinion and Order addresses Defendant Javian Hearns' Motion to Revoke Detention Order ("Defendant's Motion")[1] issued by Magistrate Judge Jonathan D. Greenberg.[2] Defendant Hearns is charged with Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), with Forfeiture. If convicted, he faces a sentence of a term of incarceration of up to 20 years, a fine of up to $1 million, supervised release for a period of three years to life, and a $100 special assessment.

In a Detention Order Pending Trial entered following a detention hearing held on February 27, 2020,[3] Magistrate Judge Greenberg found that there was probable cause to believe that Defendant had committed an offense for which a maximum prison term of ten years or more is prescribed in 18 U.S. C. § 841(b)(1)(C); that Defendant had not rebutted the presumption

[1] Doc. No. 12.
[2] Doc. No. 11.
[3] *Id.*

(established by § 3142(e)(3)) that no condition would reasonably assure his appearance and the safety of the community and therefore, that Defendant Hearns should be detained.

Magistrate Judge Greenberg found by a preponderance of the evidence that no condition or combination of conditions existed that would reasonably ensure the safety of the community or Defendant's appearance due to or based upon: the offense charged (the Government proffered the Pretrial Services report which indicated that pursuant to a search warrant targeting Defendant, 363 doses of oxycodone (a Schedule II drug) were recovered, Defendant's phone containing text messages with coded drug language consistent with trafficking in oxycodone was recovered, and a firearm from the couch in the proximity of the drugs was recovered); Defendant's consistent history of failing to appear (Defendant failed to appear and had to have warrants issued for each of his three adult convictions - two were misdemeanor convictions, specifically aggravated menacing from 2015 and disorderly conduct from 2016 and one Class E Felony conviction for attempted carrying a concealed weapon in 2019; and he was on probation in Michigan and did not advise his probation officer that he was leaving Michigan, as he was required to do, and the Michigan probation officer was going to issue a warrant for Defendant's arrest); and Defendant's criminal activity with a pattern of similar criminal activity (a gun was found in proximity to the drugs and Defendant was charged with discharge of a firearm in a building, over 10 years ago when he was 17).[4] Defendant scored a 4 on the Pretrial risk assessment and according to the Pretrial Services report, he has a history of smoking marijuana, information the Government also proffered at the time of the hearing.[5]

[4] Doc. No. 11 (PageID #33); Doc. No. 15.

[5] *Id.*

Defendant contends that Magistrate Judge Greenberg erred in concluding that no condition or combination of conditions exist that would reasonably ensure the safety of the community or Defendant's appearance. He argues that his criminal history is not significant which, when considered with his stable residence (specifically he lives with his mother in the Detroit area and she is willing to have Defendant in her home) and his age, demonstrates that he is not a danger to the community. Defendant asserts that he is not a flight risk, as demonstrated by the fact that when he was originally charged in Cuyahoga County Court of Common Pleas, Ohio with the offense that is the subject of this matter, he appeared for his arraignment and attended five pre-trial hearings during the pendency of that case. And, although Defendant concedes that he did not advise his probation officer that in order to attend his court hearings in Ohio he was leaving the state of Michigan where he is under supervision for his 2019 conviction, Defendant argues that it was just a miscommunication on his part. Defendant also argues that he suffers from nerve damage in his leg for which he was receiving medical treatment before his incarceration, and if released, his mother would assist him in receiving the necessary treatment for that nerve damage.

Defendant asserts that the Government's claim made at the hearing before Magistrate Judge Greenberg that the fact that he refused to meet with pretrial services without an attorney demonstrates that he is a flight risk is "ludicrous". When the Government made this argument at the hearing, Magistrate Judge Greenberg inquired "[h]ow is his request for counsel and his refusal to participate in the interview indicative of his being a risk of flight?"[6] The Government responded that "it shows his failure to comply with the most nominal form of supervision, just

[6] Doc. No. 15, Page ID#51.

an interview as to what your whereabouts are as to where you reside, and Magistrate Judge Greenberg merely said "Okay. Anything further on [the risk of flight issue]?" [7] Thus, it is unclear whether or not Magistrate Judge Greenberg actually considered this argument in evaluating Defendant's risk of flight. This Court is not considering it in making its decision on Defendant's Motion.

Attached to Defendant's Motion are the same exhibits that were proffered and considered by Magistrate Judge Greenberg at the hearing, specifically a letter from Defendant's mother and a copy of the docket from the Cuyahoga County Court of Common Pleas case.[8] Defendant argues that he did rebut the presumption of detention at the hearing, and that the Government did not introduce any evidence that no combination of conditions, specifically electronic monitoring and drug treatment and testing, would assure the community's safety, much less clear and convincing evidence.[9]

In its Brief in Opposition to Defendant's Motion ("the Opposition"),[10] the Government summarizes the information proffered at the detention hearing by both Defendant and the Government (and outlined above), and correctly notes that the presumption in favor of detention applies (and Defendant does not dispute this), so as to impose a burden of production upon the Defendant to come forward with evidence that he does not pose a danger to the community or a flight risk. The Government argues that both at the detention hearing and in Defendant's Motion, Defendant has failed to rebut the presumption that he is both a flight risk and a danger

[7] *Id.*
[8] Doc. No. 15, Page ID#10.
[9] Doc. No. 12, Page ID#38.
[10] Doc. No. 16.

to the community and construes Defendant's information proffered at the hearing and argument set forth in Defendant's Motion as addressing only his risk of flight and not the danger he poses to the community. The Government argues that if this Court should find that the Defendant has rebutted the presumption, the factors outlined in 18 U.S.C. § 3142(g) weigh in favor of Defendant's detention pending trial.[11] The Government argues that the nature of the offense charged, trafficking in a dangerous drug, i.e., oxycodone, his failure to appear on prior cases, violation of his probation, potential for substantial incarceration if convicted, the fact that after his arrest in Euclid for this offense he nonetheless returned to Michigan and committed a felony offense, his prior convictions, and his lack of employment/verifiable income weigh in favor of detention.[12]

Defendant filed a Reply in Response to the Opposition,[13] the essence of which is that the recent state of emergency declared by the Federal and Ohio state governments relating to the COVID-19 pandemic constitutes information not known by him at the time of his detention hearing that is material to whether there are conditions of release that may be fashioned to assure his appearance at trial and protect the community. Without citing any evidence or other specifics, except for the assertion that the jail where Defendant is housed is still accepting new arrests, Defendant declares that "[the jail where he is housed – NEOCC-CAA] has not, to date, taken any precautionary measures **that counsel is aware of** to stem the spread of this virus…."[14] Defendant acknowledges that he is not elderly and thus not at risk due to his age, but nonetheless

[11] *Id.* Page ID#65-67.
[12] Doc. No. 16 ID#66.
[13] Doc. No. 17.
[14] *Id.* Page ID#72-73. (Emphasis added.)

asserts that his continued detention poses a grave danger to both him and the community. Specifically, he asserts that because of his prior gunshot wound, he has significant nerve damage in his leg, has trouble standing or walking for long periods of time, and in the past he has suffered from several infections which required medical treatment. And, according to Defendant, "[t]he more people remain detained in detention facilities, the greater the likelihood of an unchecked outbreak of COVID-19 within our detention facilities and jails."[15] Defendant argues that strict conditions, to include ankle monitoring and home detention will protect the public from him.

During a March 20, 2020 telephone conference call to discuss the possibility of conducting a hearing on Defendant's Motion, and specifically the procedure for conducting or ability to conduct a hearing due to the pandemic.[16] Defendant, through counsel, waived a hearing, but counsel for the Government did not. The Court gave counsel for the Government leave to file a response to Defendant's Reply by March 26, 2020, and the Government filed that response on March 26, 2020.[17]

In the Government's Reply, the Government asserts, without any specific evidence or authority, that there are no cases of COVID-19 at NOCC-CAA, but does go on to correctly point out that Defendant does not allege that he has been exposed to any individuals with COVID-19 and therefore, is not seeking release based upon his actual physical and mental health, but is

---

[15] Doc. No. 17, PageID # 75, citing Beyrer Dec. ¶11.)

[1616] Since that telephone conference, on March 23, 2020, Chief Judge Gaughan issued an Amended General Order No. 2020-05, generally based upon the COVID-19 pandemic and public emergency associated therewith, and specifically the issuance of Governor DeWine's Stay at Home Order, allowing only initial appearances, arraignments, and detention hearings to proceed and be conducted by telephone or videoconference where practicable, precluding change of plea hearings from proceeding, postponing all criminal sentencings, and vacating any trials set until May 1, 2020.

[17] Reply to Defendant's Reply In Response to Government's Opposition to Motion for Bond ("the Government's Reply"). (Doc. No. 19.)

merely relying on the possibility of becoming infected. The Government's Reply focuses on, and provides information for its assertions that officials, including the Marshalls Service, Bureau of Prisons, and NOCC have established comprehensive health measures at NOCC-CCA to avoid a COVIC-19 outbreak., which will not be repeated here.[18] Also, the Government argues that Defendant has not made a factual record that his medical needs are not being adequately addressed at NOCC. And, lastly, the Government argues that awarding Defendant the relief he seeks, placing him on location monitoring and drug treatment and testing, would place a substantial and unwarranted burden on the Pretrial Services Division of the U.S. Probation Office.

As far as whether a hearing is required, while the Bail Reform Act is silent about whether a defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing. 18 U.S.C. § 3145(b) establishes that "[i]f a person is ordered detained by a magistrate judge" that person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Upon such a motion, the court must make a *de novo* "determination as to whether the magistrate judge's findings are correct based on the court's review of the evidence before the magistrate judge." *United States v. Sidbury*, No. LWF-15-184, 2015 WL 8481874, at *1 (E.D.N.C. Dec. 8, 2015) (citing *United States v. Williams*, 753 F.2d 329, 333-34 (4th Cir. 1985)). The court "may conduct an evidentiary hearing" as part of its review. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). However, "there is no statutory requirement that the court hold a hearing" and the court "retains the discretion to decide whether to hold a hearing." *United States v. Oaks*, 793 F. App'x

[18] Doc. No. 19, PageID # 84-91.

744, 747 (10th Cir. 2019). *See also*, *Williams*, 753 F.2d at 331 (recognizing that the court may permit the parties to "introduce proffers of evidence" as an alternative way to allow the introduction of new evidence); *United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (holding defendant was not entitled to evidentiary hearing); *King*, 849 F.2d at 490 ("based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct.").

A *de novo* review of the written submissions and docket filings is especially appropriate to this case, when the Court must endeavor to comply with the federal and state recommendations about avoiding bringing people together in groups larger than ten persons, as well as rule expeditiously.

On the record before me, I conclude that Magistrate Judge Greenberg's initial assessment of Defendant was correct. Given the nature of the charge against him, there is a presumption that he should be detained. He has not rebutted that presumption. Neither has he established that, if released, he would not continue to be a danger to the community. While the location monitoring that he proposed may offer useful information about where he is, it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement in the trafficking of controlled substances without detection. Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing.

While the record confirms that Defendant has disclosed that he suffers from nerve damage as a result of a gunshot wound (and that this information was proffered at the hearing before Magistrate Judge Greenberg) and has had infections associated therewith in the past, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at NOCC-CCA have implemented precautionary and monitoring practices to protect detainees from exposure to the COVID-19 virus, and assertion by the Government that this Court has recognized that reasonably necessary treatments are available in prison, and often times a prison setting will provide superior care than a defendant can obtain on the outside.[19]

On a final note, as concerning as the COVID-19 pandemic is, resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g); the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms, the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the alleged offense conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. The Court has weighed all of these factors, considered the record before it and hereby DENIES Defendant's Motion.

[19] Doc. No. 19, PageID # 91, citing *United States v. Rodriguez*, 50 F.Supp. 2d 717, 722 (N.D. Ohio 1999).

Accordingly, it is hereby ORDERED that Defendant's Motion to Revoke Detention Order, Docket No. 12, is DENIED.

It is so ordered.

Pamela A. Barker 3/27/20

Judge Pamela Barker